# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMBER STRONG ) ) ) ) | CIVIL ACTION |
| Plaintiff, ) ) | Case No. |
| v. ) ) ) | |
| SHARKNINJA OPERATING, LLC ) ) | COMPLAINT AND JURY DEMAND |
| Defendant. ) ) ) ) | |

## <u>COMPLAINT  AND JURY DEMAND</u>

PLAINTIFF, Amber Strong, by and through undersigned counsel, files this Complaint against Defendant, SharkNinja Operating, LLC, and in support thereof, makes the following allegations:

## PARTIES

1.      Plaintiff, Amber Strong, is an adult citizen and resident of the state of Maryland residing therein at 7009 Gentle Shade Road, Apartment 103, Columbia, MD 21046.

2.      Defendant, SharkNinja Operating, LLC ("SharkNinja") is a limited liability company organized under the laws of the state of Delaware and headquartered in Needham, MA. SharkNinja's sole member is EP Midco LLC, a limited liability company organized under the laws of the State of Delaware with its principal place of business in Massachusetts.  EP Midco LLC's sole member is Global Appliance, LLC, a limited liability company organized under the laws of the state of Delaware with its principal place of business in Massachusetts.  Global Appliance,

LLC's sole member is Global Appliance UK Holdco Ltd., a corporation organized under the laws of the United Kingdom with its principal place of business located in England.

3.     Upon information and belief, Defendant SharkNinja was, at all times relevant hereto, responsible for the design, manufacture, marketing, and sale of the Product at issue in this case, the Ninja Foodi Pressure Cooker (hereinafter referred to as the "Ninja Pressure Cooker" and/or the "Product").

4.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue for this action lies in the United States District Court of Massachusetts, because the Defendant is headquartered in this District and the wrongful acts upon which this lawsuit is based occurred, in part, in this District. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant has substantial, systematic, and continuous contacts in the District of Massachusetts, and it is subject to personal jurisdiction in this District.

**INTRODUCTION, NATURE OF THE CASE, AND FACTUAL ALLEGATIONS**

6.     Plaintiff was the owner of a Ninja Pressure Cooker, which she was comfortable and familiar with using for its intended purpose.

7.     Unbeknownst to Plaintiff, the Ninja Pressure Cooker, as delivered, was designed, manufactured, and distributed by SharkNinja in a defective and unreasonably dangerous condition in that the lid could be opened while the cooker was pressurized, permitting the unexpected and powerful release of scalding hot food, liquid, and/or steam without warning.

8.     On or about Friday, September 3, 2021, Plaintiff, Amber Strong, was using the Ninja Pressure Cooker, as she had done on several occasions prior, to make a beef stew.

2

9. When Plaintiff's stew had finished cooking, she noted that the steam was no longer hissing, the cooker had depressurized, and the setting had switched to "keep warm".

10. Plaintiff placed her hand on the lid of the Ninja Pressure Cooker, and had just started to turn the lid when she immediately felt the lid "pop"—which it had never done before.

11. The contents of the Ninja Pressure Cooker then unexpectedly exploded on her, causing severe burns.

12. Plaintiff immediately sought relief from the pain, using ice and Tylenol, and went upstairs. Her pain was so severe that it caused her to rock back and forth in bed.

13. Plaintiff went to her local Urgent Care center, where she was told they could not help due to the severity of burns, and directed Plaintiff to seek treatment at a burn unit. Plaintiff went to Johns Hopkins Burn Center at Bayview Medical Center for treatment.

14. As a direct result of the release of the scalding hot food, liquid, and steam caused by the conduct of the Defendant and the negligent, reckless, and defective design and manufacture of the Ninja Pressure Cooker, Plaintiffs suffered burns to her anterior abdomen and left arm.

15. The release of the scalding hot food, liquid, and steam caused Plaintiff to suffer first and second-degree burns, resulting in horrendous pain and suffering.

16. Plaintiff has suffered permanent physical scars and disfigurement in addition to significant emotional scars, from which she will never fully recover.

17. Upon information and belief, prior to distributing the Ninja Pressure Cooker, Defendant did not conduct a hazard or risk analysis and did not conduct adequate testing and investigation to determine whether the product presented an unreasonable risk of harm during expected and foreseeable use of the product.

18.     At all times relevant hereto, the Defendant failed to provide any warning of the defective and dangerous design and manufacture and the associated grave risk of harm.

19.     At all times relevant hereto, Defendant knew or should have known of the severe risk of injury created by the defective and unreasonably dangerous design and manufacture of the Ninja Pressure Cooker but failed to modify the product and failed to warn of the serious risk of harm.

20.     On information and belief, Defendant had actual knowledge of some or all of the above incidents and of the dangers associated with the design and/or manufacture of the device before the sale of the Ninja Pressure Cooker but nevertheless disregarded the severe risk of harm associated with the defect demonstrating a conscious and reckless indifference and disregard of the health, safety, and well-being of others, including Plaintiff.

21.     The injuries, damages and losses sustained by Plaintiff were the direct result of the conduct of the Defendant and the negligent, reckless, and defective design and manufacture of the Ninja Pressure Cooker.

22.     As a direct and proximate result of Defendant's negligence, carelessness, breach of warranty liability, and other liability producing conduct, Plaintiff sustained severe and permanent injuries including burns to her body, resulting in disfigurement, discoloration, severe pain and suffering, anxiety, distress, depression, self-consciousness, and a severe and permanent shock to nerves and nervous system, all of which have caused her and will continue to cause her great pain and agony, all to her great financial damage and loss.

23.     As a further direct result of the Defendant's negligence, carelessness, breach of warranty liability and other liability producing conduct, as aforesaid, Plaintiff has incurred expenses for medicine and medical attention to treat and cure her injuries, which will be provided

during discovery, and she will be forced to expend additional sums of money, which are incapable of determination at this point, for ongoing medical care in the future, all to her great financial damage and loss.

24.     The Defendant, jointly and/or severally, by and through their respective agents, ostensible agents, servants, borrowed servants, workmen, employees, and/or contractors solely caused and/or substantially contributed to Plaintiff's complained of injuries and damages, as a direct result of the carelessness, negligence, breaches of warranty, and other liability producing conduct of the said Defendant, as aforesaid.

25.      The incident which is the subject of this complaint was in no way caused or contributed to by any acts or omissions of Plaintiff.

## COUNT I – NEGLIGENCE
## (DEFENDANT SHARKNINJA OPERATING, LLC)

26.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

27.     At all times relevant, Defendant was in the business of designing, developing, testing, manufacturing, labeling, marketing, advertising, promoting, monitoring, selling and/or distributing the Product.

28.     Defendant played a role in the design and testing of the Product, either by virtue of the Defendant's control of the Product and labeling, ownership of the Product's Patent and Intellectual Property, control over the entity or entities involved in the product manufacture and labeling, and/or involvement in contractual agreements that required participation and engagement in the design and testing of the Product.

29.     Defendant had a duty to exercise reasonable and ordinary care in the designing, developing, testing, manufacturing, labeling, marketing, advertising, promoting, monitoring,

selling and/or distributing of the Product so as to avoid exposing others to foreseeable and unreasonable risks of harm.

30. Defendant breached their duty of care to the Plaintiff in designing, developing, testing, manufacturing, labeling, marketing, advertising, promoting, monitoring, selling and/or distributing of the Product.

31. Defendant knew or reasonably should have known that the Product was dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

32. At the time of the development and design of the Product, Defendant knew or should have known that the Product was designed in such a manner so as to possess a risk of serious injury and/or death as a result of burn injuries.

33. Defendant knew or reasonably should have known that the purchasers and/or consumers of the Product would not realize the danger associated with the use of the Product for its intended use and/or in a reasonably foreseeable manner.

34. Defendant had a duty to perform adequate testing on the Product to ensure the product that entered in the United States marketplace did not possess a risk of serious injury and/or death as a result of burn injuries.

35. Defendant breached their duty to exercise reasonable and prudent care in the testing and monitoring of the Product by failing to perform reasonable and adequate testing of the Product, including but not limited to testing of the Product's design and manufacture to ensure the avoidance of pressurized lid detachments, which acts as a bomb, leading to the ejection of boiling hot contents.

6

36.     Defendant also breached their duty to exercise reasonable and prudent care by failing to provide the product with all elements necessary to make it safe for its intended and foreseeable uses.

37.     Defendant also breached their duty to exercise reasonable and prudent care by failing to recall the product in a timely manner, which would have prevented Plaintiff's injuries.

38.     A reasonable manufacturer, designer, distributor, promotor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions given the extensive knowledge of pressurized lid detachments, leading to serious burn injuries, both at the time of development and use.

39.     As a direct and proximate result of the Defendant's negligent testing, monitoring, and labeling of the Product, Defendant introduced a product into the United States marketplace that is known to cause burn injuries, and Plaintiff has been injured catastrophically and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

40.     As a direct and proximate result of the aforementioned negligence and carelessness, as described above, Plaintiff, Amber Strong, suffered the following injuries, all or some of which may be permanent in nature, including:

    (a)    Mixed first and second degree burns to the abdominal wall and first degree burn to left upper arm.
    (b)    Emergency medical care and extended hospitalization.
    (c)    Permanent scarring, bruising, and disfigurement;
    (d)    Decreased mobility and dexterity;
    (e)    Reduction and/or limitation of activities of daily living and loss of independence;
    (f)    Humiliation;
    (g)    Embarrassment;
    (h)    Pain and suffering;
    (i)    Physical and emotional distress;
    (j)    Past and future medical expenses;

(k)     Incidental and other expenses;

(l)     Loss of life's pleasures; and

(m)     Other injuries and conditions documented in Plaintiff's medical records.

41.     As a result of Plaintiff's injuries caused by Defendant, Plaintiff sustained serious physical and mental pain and great discomfort, all of which required medical care and treatment.

42.     As a result of Plaintiff's injuries caused by Defendant, Plaintiff suffered, and continues to suffer, great physical and mental pain, discomfort, and inconvenience, and will continue to suffer in the future and require additional medical care because Plaintiff's injuries are severe and permanent in nature.

43.     As a result of Plaintiff's injuries caused by Defendant, Plaintiff was forced to expend additional monies and incurred numerous expenses related to Plaintiff's medical treatment.

44.     As a result of Plaintiff's injuries caused by Defendant, Plaintiff may be forced to expend additional monies and may incur additional expenses related to Plaintiff's future medical treatment.

45.     Defendant is liable in tort to Plaintiff for their wrongful conduct pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II – NEGLIGENT FAILURE TO WARN
## (DEFENDANT SHARKNINJA OPERATING, LLC)

46. Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

47. Defendant had a duty to exercise reasonable care and comply with existing standards of care in the marketing, promotion, labeling, packaging, and sale of the Product.

48. Defendant failed to exercise reasonable care and failed to comply with existing standards of care in the marketing, promotion, labeling, packaging, and sale of the Product. Defendant knew or should have known that using the Product as instructed in the labeling created an unreasonable risk of harm.

49. Defendant, their agents, servants, partners, and/or employees, failed to exercise reasonable care and failed to comply with existing standards of care in the following acts and/or omissions, among others:

(a) Failing to warn of the dangers of using the Product;
(b) Failing to provide adequate warnings and/or instructions involving the use and/or potential risks of the Product;
(c) Failing to warn of the Product's inadequate and unsafe design;
(d) Promoting and marketing the Product while knowing that the Product had the potential for pressurized lid detachments, which can cause serious burn injuries;
(e) Failing to warn in the Product's labeling that the Product had the potential for pressurized lid detachments, which can cause serious burn injuries;
(f) Failing to warn in the Product's promotions, advertising, publications, and other means of communication to the public and targeted client populations, that the Product had the potential for pressurized lid detachments, which can cause serious burn injuries.

50. Defendant's failure to warn of the Product's inadequate and unsafe design was the proximate cause of Plaintiff's injuries, harm, and economic loss, from which Plaintiff continues to suffer.

51.    As a direct and proximate result of the aforementioned negligence and carelessness, as described above, Plaintiff, Amber Strong, suffered the following injuries, all or some of which may be permanent in nature, including:

(a)    Mixed first and second degree burns to the abdominal wall and first degree burn to left upper arm
(b)    Emergency medical care and extended hospitalization.
(c)    Permanent scarring, bruising, and disfigurement;
(d)    Decreased mobility and dexterity;
(e)    Reduction and/or limitation of activities of daily living and loss of independence;
(f)    Humiliation;
(g)    Embarrassment;
(h)    Pain and suffering;
(i)    Physical and emotional distress;
(j)    Past and future medical expenses;
(k)    Incidental and other expenses;
(l)    Loss of life's pleasures; and
(m)    Other injuries and conditions documented in Plaintiff's medical records.

52.    Defendant is liable in tort to Plaintiff for their negligent failure to warn pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

### COUNT III – NEGLIGENT DESIGN DEFECT
### (DEFENDANT SHARKNINJA OPERATING, LLC)

53.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

54.    Defendant is liable to Plaintiff for the injuries and damages sustained by them due to Defendant's negligent design of the Product.

55.     At all relevant times to this lawsuit, Defendant owed a duty to all individuals and consumers, including Plaintiff, to assess, manage, and communicate the risks, dangers, and adverse effects of the Product. The Defendant's duties included, but were not limited to, carefully and properly designing, testing, studying, and manufacturing the Product.

56.     Defendant negligently and carelessly breached the above-described duties to Plaintiff by, among other acts and omissions, negligently and carelessly: (a) failing to use ordinary care in designing, testing, and manufacturing the product; (b) failing to design the Product as to properly minimize the potential for severe burns; and (c) designing a product with a potential for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents.

57.     The Product that was designed, manufactured, distributed, sold and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturer and/or supplier and/or distributor, the foreseeable risks exceeded the benefits associated with the design or formulation.

58.     The Product manufactured, distributed, sold and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous due to its propensity for pressurized lid detachment, which can cause severe burns and other injuries.

59.     Despite Defendant's knowledge of the foreseeable risks and unreasonably dangerous nature of the Product at all times relevant, Defendant designed and brought the Product to market and continued to promote the Product when there were reasonable, alternative, feasible, and safer designs available that would have lessened and/or eliminated Plaintiff's injuries.

60.     As a result of Defendant's negligent and reckless design of the Product, Plaintiff sustained life-threatening and potentially permanent injuries.

11

61.     Defendant is liable in tort to Plaintiff for their negligent acts and design of the Product pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT IV – NEGLIGENT DESIGN AND MANUFACTURING DEFECT
## (DEFENDANT SHARKNINJA OPERATING, LLC)

62.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

63.     Defendant is liable to Plaintiff for the injuries and damages sustained by them due to Defendant's negligent design of the Product.

64.     At all relevant times to this lawsuit, Defendant owed a duty to all individuals and consumers, including Plaintiff, to assess, manage, and communicate the risks, dangers, and adverse effects of the Product. The Defendant's duties included, but were not limited to, carefully and properly designing, testing, studying, and manufacturing the Product.

65.     Defendant negligently and carelessly breached the above-described duties to Plaintiff by, among other acts and omissions, negligently and carelessly: (a) failing to use ordinary care in designing, testing, and manufacturing the product; (b) failing to design the Product as to properly minimize the potential for severe burns; and (c) designing a product with a potential for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents.

66.     The Product that was designed, manufactured, and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturer, the foreseeable risks exceeded the benefits associated with the design or formulation.

12

67. The Product manufactured and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturer, it was unreasonably dangerous due to its propensity for pressurized lid detachment, which can cause severe burns and other injuries.

68. Despite Defendant's knowledge of the foreseeable risks and unreasonably dangerous nature of the Product at all times relevant, Defendant designed and manufactured the Product when there were reasonable, alternative, feasible, and safer designs available that would have lessened and/or eliminated Plaintiff's injuries.

69. As a result of Defendant's negligent and reckless design of the Product, Plaintiff sustained life-threatening and potentially permanent injuries.

70. Defendant is liable in tort to Plaintiff for their negligent acts, design and manufacturing of the Product pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT V – NEGLIGENT MISREPRESENTATION AND OMISSION
### (DEFENDANT SHARKNINJA OPERATING, LLC)

71. Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

72. At all relevant times, Defendant negligently provided all individuals and consumers, including Plaintiff, with false or incorrect information, and/or omitted or failed to disclose material information concerning the Product, including, but not limited to, misrepresentations regarding the safety and known risks of the Product.

73.    The information distributed by the Defendant to all individuals and consumers, including advertising campaigns, labeling materials, print advertisements, and commercial media, was false and misleading and contained omissions concealing the truth about the dangers of the Product.

74.    Defendant's intent and purpose in making these misrepresentations was to deceive and defraud the public, individuals, purchasers and consumers, including Plaintiff, to falsely assure them of the quality of the Product, and induce the public, individuals, purchasers and consumers, including Plaintiff, to request, recommend, purchase, and use the Product.

75.    Defendant had a duty to accurately and truthfully represent to the public, individuals, and consumers, including Plaintiff, the known risks of the Product involving its propensity for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents.

76.    Defendant omitted in the Product's labeling any instruction regarding the safety measures that should be taken to protect against the Product and pressurized lid detachment. Without these safety measures and instructions in place, users remained unaware of the dangers of the Product.

77.    Defendant has made additional misrepresentations beyond the product labeling by representing the Product as a safe.

78.    In reliance upon the false and negligent misrepresentations and omissions made by the Defendant, the public, individuals, purchasers and consumers, were induced to, and did use the Product, thereby causing severe and permanent injuries.

79.    Consumers, like Plaintiff, would not have used the Product had the Defendant not misrepresented and/or omitted the dangers resulting from the Product.

14

80.    At the time Plaintiff used the Product, Plaintiff was unaware of Defendant's negligent misrepresentations and omissions.

81.    Defendant failed to exercise ordinary care in making representations concerning the Product while they were involved in their manufacture, design, sale, testing, quality assurance, quality control, promotion, marketing, labeling, and distribution in interstate commerce, because the Defendant negligently misrepresented the Product's high risk of danger, including pressurized lid detachment, explosion, and burns from boiling contents.

82.    Plaintiff reasonably relied upon the misrepresentations and omissions made by the Defendant where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Product.

83.    Plaintiff's reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiff's injuries.

84.    As a direct and proximate result of the aforementioned negligence and carelessness, as described above, Plaintiff, Amber Strong, suffered the following injuries, all or some of which may be permanent in nature, including:

(a)    Mixed first and second degree burns to the abdominal wall and first degree burn to left upper arm.
(b)    Emergency medical care and extended hospitalization.
(c)    Permanent scarring, bruising, and disfigurement;
(d)    Decreased mobility and dexterity;
(e)    Reduction and/or limitation of activities of daily living and loss of independence;
(f)    Humiliation;
(g)    Embarrassment;
(h)    Pain and suffering;
(i)    Physical and emotional distress;
(j)    Past and future medical expenses;
(k)    Incidental and other expenses;
(l)    Loss of life's pleasures; and
(m)    Other injuries and conditions documented in Plaintiff's medical records.

85.    Defendant is liable in tort to Plaintiff for their negligent failure to warn pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages and for costs, in an as yet unliquidated sum in excess of $50,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT VI – BREACH OF IMPLILED WARRANTY FAILURE TO WARN (DEFENDANT SHARKNINJA OPERATING, LLC)

86.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

87.    The Product is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses and does not meet or perform to the expectations of users in that the side effects caused by the Product nullify any possible culinary benefit.

88.    Defendant sold the Product in a defective condition unreasonably dangerous to Plaintiff, the purchaser and/or foreseeable consumer, and therefore, Defendant is subject to liability pursuant to Restatement (Second) of Torts § 402A for the physical harm thereby caused to Plaintiff.

89.    Defendant is engaged in the business of selling the Product, and the Product was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Defendant's possession.

90.    Defendant designed, set specifications, manufactured, prepared, marketed, promoted, labeled, distributed and sold the Product, including the product used by Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to individuals, purchasers, and consumers.

16

91.    At the time Defendant designed, set specifications, manufactured, prepared, marketed, promoted, labeled, distributed and sold the Product into the stream of commerce, Defendant knew or should have known that the device presented an unreasonable danger to users of the Product when put to its intended and reasonably anticipated use.

92.    Specifically, Defendant knew or should have known that the Product posed a significant risk for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents, which could lead to debilitating and long-term injuries as fully set forth in this Complaint.

93.    Defendant had a duty to warn of the risk of harm associated with the use of the Product and to provide adequate warnings concerning those risks.

94.    The Product was unreasonably dangerous at the time of its release into the stream of commerce due to the inadequate warnings, labeling and/or instructions accompanying the device.

95.    The Product administered to and used by Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendant.

96.    Defendant is liable for their deficient labeling of the Product and conduct in manufacturing, inspecting, marketing, labeling, promoting, distributing and selling the Product for the following, non-exhaustive reasons:  (a) promoting and marketing the Product while knowing that the Product had the potential for pressurized lid detachments, which can cause serious burn injuries; (b) failing to warn in the Product's labeling that the Product had the potential for pressurized lid detachments, which can cause serious burn injuries; (c) failing to warn in the Product's promotions, advertising, publications, and other means of communication to the public

17

and targeted client populations, that the Product had the potential for pressurized lid detachments, which can cause serious burn injuries.

97.     Defendant intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits in order to advance their own financial interests, with wanton and willful disregard for the rights and health of the Plaintiff.

98.     Plaintiff used the Product consistent with the instructions provided in the product labeling and in a manner that was reasonably foreseeable to Defendant.

99.     Plaintiff could not have, by the exercise of reasonable care, discovered the extent of the Product's defective condition or perceived its unreasonable dangers prior to using the Product.

100.    As a proximate result of the Defendant's marketing, promotion, labeling, sale and/or distribution of the Product, as described above, Plaintiff, Amber Strong, suffered the following injuries, all or some of which may be permanent in nature, including:

    (a)    Mixed first and second degree burns to the abdominal wall and first degree burn to left upper arm
    (b)    Emergency medical care and extended hospitalization.
    (c)    Permanent scarring, bruising, and disfigurement;
    (d)    Decreased mobility and dexterity;
    (e)    Reduction and/or limitation of activities of daily living and loss of independence;
    (f)    Humiliation;
    (g)    Embarrassment;
    (h)    Pain and suffering;
    (i)    Physical and emotional distress;
    (j)    Past and future medical expenses;
    (k)    Incidental and other expenses;
    (l)    Loss of life's pleasures; and
    (m)    Other injuries and conditions documented in Plaintiff's medical records.

101.    Defendant is liable to Plaintiff for their reckless and wrongful conduct pursuant to Massachusetts warranty law.

18

WHEREFORE, Plaintiff demands judgment against the Defendant for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VII – BREACH OF IMPLIED WARRANTY DEFECTIVE DESIGN
## (DEFENDANT SHARKNINJA OPERATING, LLC)

102.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

103.    The Product is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses and does not meet or perform to the expectations of users in that the side effects caused by the Product nullify any possible culinary benefit.

104.    Defendant designed the Product in a defective condition unreasonably dangerous to Plaintiff, the purchaser and/or foreseeable consumer, and therefore, Defendant is subject to liability pursuant to Restatement (Second) of Torts § 402A for the physical harm thereby caused to Plaintiff.

105.    Defendant is engaged in the business of designing and selling the Product, and the Product was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Defendant's possession.

106.    The Product used by Plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the device would have expected at time of use.

107.    The Product used by Plaintiff was defective in design, in that the product's risks of harm clearly exceeded its claimed benefits.

108.    Defendant is liable in the above-described duties to Plaintiff by, among other acts and omissions: (a) failing to use ordinary care in designing and testing the product; (b) failing to

design the Product as to properly minimize the potential for severe burns; and (c) designing a product with a potential for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents.

109.    Plaintiff used the Product consistent with the instructions provided in the product labeling and in a manner that was reasonably foreseeable to Defendant.

110.    Plaintiff could not have, by the exercise of reasonable care, discovered the extent of the Product's defective condition or perceived its unreasonable dangers prior to using the Product.

111.    As a result of the foregoing design defects, the Product created risks to the health and safety of its users, including Plaintiff, that was significant and devastating and which far outweigh the utility of the Product.

112.    At the time the Product was developed and designed, there existed a reasonable and safer alternative known to Defendant and available on the marketplace and comparatively safer than the Product that would have lessened and/or eliminated Plaintiff's injuries.

113.    Defendant has intentionally and recklessly designed and developed the Product with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

114.    As a proximate result of the Defendant's design and development of the Product, Plaintiff, Amber Strong, suffered the following injuries, all or some of which may be permanent in nature, including:

  (a)    Mixed first and second degree burns to the abdominal wall and first degree burn to left upper arm;
  (b)    Emergency medical care and extended hospitalization;
  (c)    Permanent scarring, bruising, and disfigurement;
  (d)    Decreased mobility and dexterity;

20

(e)    Reduction and/or limitation of activities of daily living and loss of independence;
(f)    Humiliation;
(g)    Embarrassment;
(h)    Pain and suffering;
(i)    Physical and emotional distress;
(j)    Past and future medical expenses;
(k)    Incidental and other expenses;
(l)    Loss of life's pleasures; and
(m)    Other injuries and conditions documented in Plaintiff's medical records.

115.    Defendant is liable to Plaintiff for their wrongful conduct pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

**COUNT VIII – BREACH OF EXPRESS WARRANTY (M.G.L. Ch. 106 s. 2-313)**
**(DEFENDANT SHARKNINJA OPERATING, LLC)**

116.    Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

117.    Plaintiff asserts a breach of express warranty of merchantability claim against Defendant.

118.    Defendant sold, and Plaintiff purchased, the Product.

119.    Defendant misrepresented on the packaging, the "safety features" of the Product.

120.    Defendant made these misrepresentations as to the "safety features" of the Product in order to solicit consumers to purchase the Product. Defendant's listing of "safety features" of the Product on Defendant's website constituted an affirmation of fact and a description of the goods provided.

121. Defendant's misrepresentations as to the "safety features" of the Product were a basis of Plaintiff's purchase of the Product sold by Defendant.

122. Defendant's misrepresentations as to the "safety features" of the Product constitutes a breach of express warranty.

123. Defendant had notice and the opportunity to repair the defect repeatedly but failed to do so.

124. As alleged, Defendant's Product did not have the "safety features" it purported to have, because the Product exploded, caused severe burns, and needed to be recalled.

125. The Product did not measure up to the promises or facts stated in the "safety features" advertisement and communications by and from Defendant.

126. Defendant expressly warranted that the Product was merchantable, fit, and safe for ordinary use.

127. Defendant further expressly warranted that the Product was fit for the particular purposes for which it was intended and sold.

128. Contrary to these express warranties on the "safety features," which Plaintiff reviewed prior to purchase, Defendant's Product was defective, unmerchantable, and unfit for its ordinary use when sold, and unfit for the particular purpose for which it was sold and operated.

129. As a proximate result of Defendant's design, manufacture, marketing, sale, and distribution of the Product, Plaintiff, Amber Strong, suffered the following injuries, all or some of which may be permanent in nature, including:

(a) Mixed first and second degree burns to the abdominal wall and first degree burn to left upper arm;
(b) Emergency medical care and extended hospitalization.
(c) Permanent scarring, bruising, and disfigurement;
(d) Decreased mobility and dexterity;

(e)    Reduction and/or limitation of activities of daily living and loss of independence;

(f)    Humiliation;

(g)    Embarrassment;

(h)    Pain and suffering;

(i)    Physical and emotional distress;

(j)    Past and future medical expenses;

(k)    Incidental and other expenses;

(l)    Loss of life's pleasures; and

(a)    Other injuries and conditions documented in Plaintiff's medical records.

130.    Defendant is liable to Plaintiff for their wrongful conduct pursuant to Massachusetts common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against Defendant and requests the following relief:

A)    compensatory damages for past, present, and future damages, including, but not limited to, great pain and suffering and emotional distress and anguish, for personal injuries sustained by Plaintiff, health and medical care costs, together with interest and costs as provided by law;

B)    for all ascertainable economic and non-economic damages in an amount as provided by law and to be supported by evidence at trial;

C)    for specific damages according to proof;

D)    for pre-judgment interest and post-judgment interest as allowed by law;

E)    for reasonable attorneys' fees;

F)    for the costs of these proceedings; and

G)    for such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial with regards to all claims.

DATED: August 28, 2024                    Respectfully submitted,

                                          /s/ Paula S. Bliss
                                          Paula S. Bliss, Esq. (BBO# 652361)
                                          Justice Law Collaborative, LLC
                                          210 Washington Street
                                          North Easton, MA 02356
                                          Tel: 508-230-2700
                                          paula@justicelc.com


                                          And


                                          Joshua M. Neuman (*pro hac vice* forthcoming)
                                          Meghan J. Talbot (*pro hac vice* forthcoming)
                                          Pogust Goodhead, LLC
                                          161 Washington Street, Suite 250
                                          Conshohocken, PA 19428
                                          jneuman@pogustgoodhead.com
                                          mtalbot@pogustgoodhead.com


                                          *Counsel for Plaintiff*

24